WILLIAM W. WELCH *vs*. THE BOSTON & ALBANY RAILROAD COMPANY.

The defendants, a railroad company, claimed to be exempt from liability for an injury to a horse transported upon their road, by reason of a stipulation in the bill of lading that they were not to be liable for any one of certain specified injuries or causes of injury to any animal thus carried. The court charged the jury that they were still liable for any injury caused by want of ordinary care on their part. Held that the charge was correct.

A stipulation by a bailee for hire for exemption from the consequences of his own negligence, has no validity.

There may however be a valid stipulation for a degree of responsibility less than that imposed by law.

Where a stipulation in such a case was open to a question as to whether it intended an exemption from all liability or only a limitation of the common law liability, and the judge charged the jury that it was void, but that the defendants would be liable only for want of ordinary care, it was held that the defendants were not injured by the charge of the judge that the stipulation was void, even if it were not so, since he held them only to the degree of liability to which they would have been held under any construction of it.

CASE, against the defendants as common carriers, for an injury to a horse carried by them; brought to the District

Court of the County of Litchfield, and tried to the jury, on the general issue, with notice, before *Hitchcock, J.*

On the trial it was proved that the plaintiff at Whitesboro, in the state of New York, delivered the horse to the New York Central Railroad Company for transportation, with a card attached to his halter, marked "Dr. William W. Welch, care of Dr. Stillman, Millerton, N. Y." The railroad company received the horse and signed a bill of lading for him. The plaintiff at the same time, by his agent A. B. Smith, signed the following document, known as a "·stock release."

"New York Central Railroad, Whitesboro' Station, Feb'y 27, 1873.

"Memorandum of an agreement made·this day, between the New York Central Railroad Company of the first part, by their station agent at the above named station, and A. B. Smith, agent, of Whitesboro', of the second part: Whereas the said New York Central Railroad Company transports cattle, horses, hogs, pigs, sheep, lambs, calves and other live stock only at first-class rates as per tariff, excepting where they transport them at a reduced rate in consideration of the owner or shipper assuming certain risks as specified below: Now in consideration that the said railroad company will transport for the party of the second part such live stock at the reduced rate of 55 1-2 cents per 100 lbs., the said party of the second part does hereby agree that the party of the first part shall not under any circumstances, nor for any cause, be held liable beyond the sum of $200 for injury to.or loss of any single animal carried pursuant to this agreement, although the actual value of such animal may exceed that amount; and said party of the second part also agrees to take the risk of injuries which the animals or either of them may receive in consequence of any of them being wild, vicious, unruly, weak, escaping or maiming themselves or each other, or from delays, or in consequence of heat, suffocation, or of being crowded, or on account of being injured, whether such injury shall be caused by the burning of hay, straw or any other material used for feeding said animals, or otherwise, and for any damage occasioned thereby, and also

all risk of any loss or damage which may be sustained by reason of any delay in such transportation. And said party of the second part also agrees to examine the cars in which such animals are carried and to take all risk against accidents, injuries or damages that may happen in consequence of insecurity or defect (if any there may be) in the floor, frame or doors of the cars. And it is further agreed that said party of the second part is to load, trans-ship and unload said stock at his own risk, the railroad company furnishing the necessary laborers to assist. And it is further agreed between the parties hereto that the persons riding free to take charge of the stock, do so at their own risk of personal injury from whatever cause. And this agreement further witnesseth, that the said party of the second part has this day delivered to said railroad company one horse to be transported to Millerton, N. Y., on the conditions above expressed. By Harlem R. R. Albany. S. PURDY, Station Agent."

It was proved that the plaintiff did not read this instrument.

There is no evidence that the railroad company made any deduction from its first-class rates as a consideration of this release, except as appears from the instrument itself, and the plaintiff claimed he paid the highest rates.

It was agreed that the regular line of transportation from Whitesboro' to Millerton was by the Central railroad from Whitesboro' to East Albany and thence to Chatham by the defendants' railroad, and from there to Millerton by the Harlem railroad.

The horse was transported by the Central Railroad Company from Whitesboro' to East Albany, and there, with the card attached to his halter, and with the stock release, was delivered to the defendants, who transported the horse over their railroad from East Albany to Chatham. The defendants gave the plaintiff a bill of freight for the horse, stating the place to which he was to be transported.

When the horse arrived at Chatham he was found to have been injured. The plaintiff offered evidence to prove, and claimed that he had proved, that the horse received his injur-

ies while in the custody of the defendants for transportation; but the defendants denied this.

The plaintiff asked the court to instruct the jury to lay the stock release out of the case; because—1st. The defendants had not shown any consideration for the release. 2d. The contract stipulated for the total exemption of the railroad company, and was void as being against public policy. 3d. The defendants were not named in the contract, and they demanded and received a consideration for the transportation of the horse other than what is mentioned therein. 4th. The defendants made an entirely independent contract for the transportation of the horse, as shown by the bill delivered by them.

The defendants claimed, and asked the court to instruct the jury, that under the facts of the case they were not carrying the horse on their road as common carriers, and subject to the strict rules which the law imposes on mere common carriers who have not limited their liabilities by special contract; that the stock release as between the Central Railroad Company and the plaintiff, was a valid agreement, by which the duties and liabilities of that company in respect to the horse were limited, and were not the same as those imposed by law on common carriers; and that the defendants were entitled to the benefit of the release and to the same limitation of its liabilities and duties under it that the Central Railroad Company was entitled to by virtue of it.

The court instructed the jury that the defendants were common carriers, and as such might to some extent limit their liability by special contract; but that the law did not permit common carriers to exempt themselves from the exercise of ordinary care and diligence in the discharge of their duties; and that the stock release was void as stipulating for total exemption from liability. And that if they should find that the plaintiff's horse was injured on the defendants' railroad, or while in the custody of the defendants for transportation, from the want of ordinary care and diligence on the part of the defendants. in such case the defendants would be

liable notwithstanding the release, and their verdict should be for the plaintiff. But that if they should find that the horse was not injured on the defendants' railroad, nor while in their custody for transportation, then their verdict should be for the defendants ; or, if they should find that the horse was injured while in the defendants' custody for transportation or while being transported on their railroad, but without any want of ordinary care and diligence on their part, then in such case their verdict should be for the defendants.

The jury returned a verdict for the plaintiff, and the defendants moved for a new trial for error' in the charge of the court

*E. W. Seymour*, in support of the motion.

1. A common carrier may by a special contract exonerate himself even from the consequences of his own negligence. The English cases, until the passage of the " Railway Traffic Act," (17 & 18 Vict., ch. 31,) which provides that no railway company shall limit its liability except by special contract signed by the party and held reasonable by the court before whom the question should be brought, uniformly so held. Cases in this country have taken the same position. And the position would seem to be correct upon principle. *Chippendale* v. *Lancashire & Yorkshire Railway Co.*, 15 Jur., 1106 ; 2 Parsons on Cont. (6th ed.), 233, 234 and note, 243 and note ; *Dow* v. *N. Jersey Steam Nav. Co.*, 11 *N. York*, 485 ; *Guillaume* v. *Hamburg & Am. Packet Co.*, 42 id., 212 ; *Lamb* v. *Camden & Amboy R. R. Co.*. 46 id., 271 ; *Baltimore & Ohio R. R. Co.* v. *Rathbone*, 1 W. Virg., 87 ; *Betts* v. *Farmers' Loan & Trust Co.*, 21 Wisc., 80 ; *Fay* v. *Steamer New World*, 1 Cal., 348 ; Redf. on Railways, 276 and note.

2. If the court should hold that a common carrier can not protect himself by contract against all liability, yet it will give force to the contract to the extent permitted by law, and read it as a contract of exemption from liability so far as the law will permit. The provisions of the law are to be taken to be a part of the contract and it will be construed in the light of such provisions. The contract is not void. 2 Par-

sons on Cont., 497 ; Redf. on Railways, 274 and note 16 ; *Mercantile Mut. Ins. Co.* v. *Chase*, 1 E. D. Smith, 115 ; *Sager* v. *Portsmouth &c. R. R. Co.*, 31 Maine, 228.

3. It will be argued on the other side that if the court erred in charging that the stock release was void, yet in charging the jury that " if they should find that the horse was injured while in the defendants' custody for transportation, or while being transported on their railroad, but without any want of ordinary care on their part, their verdict should be for the defendants," the court gave us as favorable a rule in respect to the measure of our liability as we could have claimed if it had given the force and construction to the release which we contended for. To this we answer, that the charge as to our liability (the release being held void and we remitted to our common law liability) was plainly erroneous—1st, in holding the release void ; and 2d, in stating the measure of our liability. The first mistake was to our great injury. But the plaintiff says the second was in our favor, and should be set off against the first. We object to this view. If there was an error in the first proposition it is not enough to say that in view of another error *it is possible* that no injury resulted to us. The conflict had been upon the admissibility of the release to limit our liability, we admitting that, if it was void and to be withdrawn from consideration, we were subject to the strict rules which the law imposes on common carriers who have not limited their liabilities by special contract, which is practically to make us insurers of property committed to us. The plaintiff insisted the contract was void, and of course claimed that we were subjected to the strict rules imposed on common carriers, and could only excuse ourselves for not delivering the property in perfect safety by the intervening act of God or public enemies or inevitable accident. The record shows that the judge instructed the jury that we were acting as common carriers and that the contract was void. It followed, then, by our admission in arguing to the jury, that if the contract was void we were liable for something more than ordinary care and diligence. And yet it is claimed that the judge, by

stating the liability more favorably for us than he ought in another part of his charge, has foreclosed us from complaining of the first error. It is not fair to presume that the second error had any effect on the jury to destroy the legitimate effect of the first error. Where there is manifest error it is holden that the fact that no injury has accrued to the losing party from the error complained of, must be *distinctly shown* in order to prevent a new trial. Hilliard on N. Trials, 43. A wrong construction is held to be ground for a new trial, though it is not certain that it affected the jury. *Baldwin* v. *Peet*, 22 Tex., 708. Also where there is reason to apprehend that the instructions may have misled the jury in an important particular. *Sherman* v. *Champlain Transportation Co.*, 31 Verm., 162. It has been held that the court will presume injury from error in the court below unless the record rebuts such presumption and shows affirmatively that no injury could have resulted. *Dave* v. *The State*, 22 Ala., 23; *Mims* v. *Sturdevant*, 23 id., 664. It should appear to be morally certain that erroneous instructions have not been injurious before the party aggrieved can be deprived of a new trial. *Tucker* v. *Baldwin*, 13 Conn., 136; *Thacher* v. *Jones*, 31 Maine, 528. Again, if the contract was not void, it was beneficial to us for other purposes than as limiting our liability. It threw the onus of proving our negligence upon the plaintiff. 2 Parsons on Cont., (6th ed.,) 156, 157; *Lamb* v. *Camden & Amboy R. R. Co.*, 46 N. York, 271. Nothing in the charge relieved us from this responsibility, but the charge that the contract was void deprived us of this great and important advantage which it would have been the duty of the judge to give us had he given us the benefit of the contract.

4. If the contract of release was not void, we claimed to be entitled to the benefit of its provisions and to be by law subrogated to the rights and liabilities of the Central road under it. *Lamb* v. *Camden & Amboy R. R. Co.*, 46 N. York, 277, 284; *Mallory* v. *Burrett*, 1 E. D. Smith, 234; *Stoddard* v. *Long Island R. R. Co.*, 5 Sandf., 180.

*Andrews* and *Hardenbergh*, contra.

1. It is entirely immaterial what the court charged respecting the " stock release," unless the defendants had put themselves in a position to be entitled to have it considered by the jury. This they had not done. They did not show any consideration for this agreement. It is expressly found that they offered no evidence of any deduction from their highest rates. The defendants were not a party to the release. There was no sort of contract relation between the plaintiff and the defendants in respect to it. The plaintiff cannot be holden to have contracted with the defendants unless the language is clear and explicit. No rule of law is better settled than that an agreement obtained by a common carrier in derogation of his common law responsibilities is to be rigidly construed. Nothing short of an express stipulation should be permitted to discharge him from the duties which the law has annexed to his employment. And the burden of showing this is on the carrier. *N. Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How., 344, 383. The defendants by their own conduct have shown that they did not consider themselves parties to the stock release. They made an entirely independent contract for the transportation of the horse, and demanded and received a consideration therefor, as is shown by their receipt. It having been proved and found that the plaintiff did not read the release, the defendants cannot claim anything from it. Even the Central Railroad Company could not. *Judson* v. *Western R. R. Co.*, 6 Allen, 486.

2. The stock release is void. It stipulates for a total exemption from liability. It is abundantly settled that a carrier cannot make any valid contract excusing himself from responsibility for damage or loss in consequence of want of ordinary care and skill. Judge Redfield, in 2 Am. Railway Cases, 226, says : " It being clearly established that common carriers have public duties which they are bound to discharge with impartiality, they cannot, either by notices or special contracts, release themselves from the performance of these public duties, even by consent of those who employ

Welch v. Boston & Albany R. R. Co.

them—for all extortion is done with the apparent consent of the victim." And he comes to this conclusion:—"That every attempt of carriers, by general notice or special contract, to excuse themselves from responsibility for losses or damages, resulting in any degree from their own want of care and faithfulness, is against that good faith which the law requires as the basis of all contracts or employments, and therefore based upon principles and a policy which the law will not uphold." *Camden & Amboy R. R. Co.* v. *Baldauff*, 16 Penn. S. R., 67. The U. S. Supreme Court has decided in a case arising on this very stock release (*N. Y. Central R. R. Co.* v. *Lockwood*, 17 Wall., 357,) that it is void, and that it afforded no protection to the railroad company.

3. Under the instruction given to the jury they must have found that the defendants were guilty of a want of ordinary care and skill. The defendants could have had no more than this in any event. They have not been harmed. A new trial will not be granted for a misdirection where the losing party has not been prejudiced. *Nicholson* v. *N. York & N. Haven R. R. Co.*, 22 Conn., 74; *School District* v. *Lynch*, 33 id., 330.

FOSTER, J. The controlling legal question, and the only important one in this case, is, what were the liabilities incurred on the part of these defendants, to this plaintiff, in the transportation of this horse? Were those liabilities such as are attached to common carriers by the common law, or were they such only as were created by special contract entered into between the parties?

The plaintiff, for certain reasons assigned by him, prayed the court to lay the special contract, set up by the defendants, out of the case; the defendants insisted that the same was a good and valid agreement between the plaintiff and the Central Railroad Company; that the defendants were entitled to the same limitation of liabilities and duties under it as had been stipulated for by the Central Railroad Company; and that the duties and liabilities of the defendants,

in respect to the transportation of the horse, were not those by law imposed on common carriers.

The court charged the jury that the special contract insisted on by the defendants as the measure of their liability, was void, as stipulating for a total exemption from all liability.

If such was the character of this special contract, we are of opinion that the court was correct in pronouncing it void. We cannot recognize the validity of an agreement to exempt a party from all liability, where he fails to exercise ordinary care and diligence in the business in which he engages. It is revolting to the moral sense, and contrary alike to the salutary principles of law and a sound public policy, to allow a bailee for hire to stipulate for exemption from the consequences of his own carelessness and negligence.

But the defendants claim that the special contract set up by them was a limitation of their common law liability, not an exemption from all liability. That it was competent to the parties in this suit to stipulate for a diminished degree of responsibility from that imposed by law on common carriers, we have no doubt. Whether the construction put on this special contract, in the court below, was correct or not, we think the defendants have no just ground of complaint, when we look at the manner in which the case was finally put to the jury. By the charge the liability of the defendants was for ordinary care only. The jury were told that if they should find that the plaintiff's horse was injured on the defendants' road, or while in their custody for transportation, from want of ordinary care and diligence on their part, the defendants would be liable. But unless they should find such an injury so received on the defendants' road, or while the horse was in their custody for transportation, or if they found such injury was so received, but without any want of ordinary care and diligence on their part, then their verdict should be for the defendants.

The responsibility of the defendants was thus made no more weighty than that required by law to be of perpetual obligation. If this special contract relieved from all liability,

it was void. If it limited responsibility to the exercise of ordinary care, and no construction can be more favorable to the defendants, the defendants have the benefit of their contract, for that was the extent of the liability to which they were subjected under the charge of the court. A bailee without reward is responsible for such care as a prudent man takes of his own property ; in other words, for ordinary care. The defendants surely cannot complain when held to no higher degree of responsibility.

It is unnecessary to pursue this discussion. The Supreme Court of the United States, in the recent case of *Railroad Co.* v. *Lockwood*, 17 Wallace, 357, had the law bearing upon this subject under consideration. The leading English and American authorities were fully examined in a very elaborate opinion by Mr. Justice Bradley. We coincide in the views therein expressed.

There should be no new trial.

In this opinion the other judges concurred.

*Note.*—The foregoing case was submitted on briefs, and Judge Carpenter oined in the decision though not present at the term.