[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE AND APPLICATIONPENDENTE LITE
The Connecticut Light and Power Company (CLP) brought this action against Connecticut Mutual Electric Energy Cooperative (Coop) as an application seeking an order pendente lite pending arbitration. In that same action Coop moves to strike that application.
There is another action in which Coop seeks only discovery.
FACTS
CLP is a wholly-owned subsidiary of Northeast Utilities ("NU") and provides electric service in the State of Connecticut. Coop is a public cooperative created by Connecticut statute that supplies electricity to a number of municipal and other electric systems in Connecticut. CLP, along with another NU subsidiary, owns two nuclear generating units known as Millstone Units 1 and 2 (collectively the "Units"), which are located in Waterford, Connecticut.
On September 15, 1981, CLP and Coop entered into a long-term power sale contract, known as a Life-of-Unit Contract (the "Contract"), in which CLP agreed to sell and Coop agreed to CT Page 13466 purchase approximately 3% of the output of the Units. Under the terms of the Contract, any dispute between the parties concerning the Contract would be submitted to arbitration and the Contract would be interpreted in accordance with Connecticut law.
Section 22 of the Contract, as amended, provides that Coop shall pay to CLP on a monthly basis the sum of a capacity charge, an energy charge, and a special charge, as set forth in the Contract. Section 22 of the Contract also states specifically that Coop must continue to make such monthly payments "whether or not any of the Units is operating (or is operable)". (Id).
Section 16 of the Contract provides in part, "It is the intent of the parties that [Coop] shall assume the risks of interruption, failure or deficiency in quality or quantity of service to the same extent as if [Coop] were itself operating the Units for the purpose of supplying itself with electricity."
On November 4, 1995, and February 20, 1996, the Units were taken out of service. The Units are expected to return to service in 1998, and are licensed to operate until 2010 and 2015, respectively upon approval by the Nuclear Regulatory Agency (NRC). They have produced no electricity for over twenty-two (22) months and nineteen (19) months respectively. Coop continued to make the contract payments through November 1996. In December 1996, Coop refused to make any further payments.
To date, Coop has failed to make monthly payments from December 1996 through the present, totaling approximately $15,000,000.
On December 16, 1996, Coop requested arbitration of its claim by letter which reads as follows:
"Connecticut Light Power Company Vice President, Power Supply Planning Research c/o Northeast Utilities Service Company P.O. Box 270 Hartford, CT 06101
Gentlemen:
 This notice is given pursuant to Section 18 and Section 19 of the Millstone Point Unit 1 and 2 Unit Contract ("Unit Contract") between Connecticut Light CT Page 13467 Power Company ("CLP") and Connecticut Municipal Electric Energy Cooperative ("CMEEC"). CMEEC hereby calls for arbitration of its ongoing disputes with CLP in accordance with Section 18, as those disputes have not been resolved for over four months since originally being raised.
 CLP has substantially and materially breached its duties and obligations to CMEEC under the Unit Contract by various acts and omissions, and CLP is liable to CMEEC for substantial damages suffered as a result thereof. CLP's breaches and repudiation of its future performance obligations under the Unit Contract result in a termination of the Unit Contract and excuse all further performance by CMEEC as a matter of applicable law. Section 31 of the Unit Contract specifically states `Interpretation and performance of this Unit Contract shall be in accordance with, and shall be controlled by, the laws of the State of Connecticut.' Connecticut law, inter alia, specifically provides for CMEEC's action in light of your actions. CMEEC's disputes with CLP include the amount of statutory and/or actual and/or punitive damages caused by CLP's aforementioned breaches (including pre-award and post-award interest, attorneys' fees, costs and expenses)."
On March 4, 1997, Maurice R. Scully of Coop again wrote to CLP stating the Coop would not make any further payments to CLP as required under the Contract, saying:
 "CMEEC has received invoices form CLP dated 12/11/96, 1/14/97 and 2/13/97 which includes billing for the Millstone Units 1 and 2 Life-of-Unit (LOU) Contract as well as other LOU Contracts.
 As of December 16, 1996 and for all subsequent time, CMEEC will make no further payments pursuant to the now terminated Millstone Units 1 and 2 LOU Contract. [Emphasis in original.]
 If you continue to bill CMEEC for these amounts, CMEEC will deduct such amounts from the bills when making payments to CLP."
CT Page 13468
The parties have agreed on an arbitrator to decide the merits of their dispute; have framed the issues and are proceeding with discovery.
In the pending arbitration, Coop seeks:
 — a declaratory ruling that the Contract has been terminated due to CLP's material breaches and is no longer of any force or effect;
 — a declaratory ruling that Coop has no further obligations pursuant to the Contract to CLP;
 — a finding that CLP is required to pay damages to Coop for replacement power and operation and maintenance costs incurred due to CLP's breaches; and
— damages and expenses of arbitration.
CLP has filed a counterclaim in the arbitration seeking a determination that Coop is required to make payments as set forth in the Contract.
On July 30, 1997, the Connecticut Department of Public Utility Control ("DPUC") ruled on a motion for summary judgment brought by various public parties in a proceeding concerning the prudence of CLP's actions in managing and operating the three nuclear plants at Millstone Station, which include the two plants which are the subject of the Contract as issue here. The DPUC concluded that:
 The incontrovertible facts in evidence, viewed in the light most favorable to CLP, demonstrate imprudent management of its nuclear units, and CLP has not provided an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Ex. 2 at 14.
The DPUC ruled that CLP would not be entitled to recover from ratepayers any of the estimated $960 million in operating costs incurred due to its actions.
LAW CT Page 13469
It is most important that we first determine what CLP is actually seeking regardless of what the parties may call it. This court will treat CLP's application under paragraph (2) of its prayer for relief, that is, as an application for a pre-judgment remedy to attach sufficient property of Coop to satisfy any judgment CLP may obtain as a result of the proposed arbitration and following any possible court order under C.G.S. § 52-422.
It is probable that the arbitration will find the plaintiff negligent.
Ours is an issue of how the terms of a written contract are to be enforced when faced with a claim of common law negligence. The contract, Section 22, has Coop assume all risks.
The exact contract language in Section 22 upon which CLP relies, reads as follows:
 "All of the charges provided for in this Section 22 are payable whether or not any of the Units is operating (or is operable). Nothing herein shall, however, be construed to bar Buyer's right to recover damages sustained by it which result from any breach of this Unit Contract by CLP, or to bar Buyer's right to obtain specific performance of this Unit Contract; provided, however, that exercise of Buyer's right to obtain specific performance shall in no event result in a suspension to, or a reduction in any applicable payment to be made by Buyer pursuant to this Section 22."
The contract also includes Section 16 which, in pertinent part, reads as follows:
 "16. INTERRUPTED OR DEFICIENT SERVICE. This Unit Contract shall not be interpreted to result in any responsibility by CLP or the other Owners to Buyer in tort, contract, or otherwise, for any damages whatsoever (including damages resulting from the negligence of CLP or the other Owners, their employees, contractors or agents) which may result from interruption or failure of service of deficiencies in the quality or quantity of service hereunder. It is the intent of the parties that Buyer shall assume the risks of interruption, failure or deficiency in quality or quantity of service to the same extent as if Buyer were itself operating the Units for CT Page 13470 the purpose of supplying itself with electricity.
With certain exceptions the "law does not favor contract provisions which relieve a person from his own negligence".Griffin v. Nationwide Moving Storage Co.,187 Conn. 405,413. Bailment contacts are a limited exception but even that exception "does not go to the extent of relieving him of his own negligence". Malone v. Santora, 135 Conn. 286,293. The reason is that such a provision is "revolting to the moral sense, and contrary alike to the salutary principles of law and a sound public policy". Welch v. Boston A.R. Co.,41 Conn. 333,342.
Another exception is given to contracts of indemnification.Burkle v. Car Truck Leasing Co., 1 Conn. 54, 57.
This case does not involve an indemnification contract as we see in Burkle v. Car Truck Leasing Co., id 56-57.
This court does not find any exception to allow plaintiff to enforce a provision excusing itself from its own negligence.
Considering the facts in favor of CLP and those facts in favor of Coop, the court cannot find probable cause that CLP will prevail in the arbitration cause and therefore will not order a prejudgment remedy "to secure the satisfaction [of the award] when rendered."
Motion to strike denied. Application for order pendente lite denied.
O'Neill, J.