Camp *v.* Hartford & New York Steamboat Company.

SAMUEL T. CAMP *vs.* THE HARTFORD & NEW YORK STEAMBOAT COMPANY.

It is well settled that common carriers may stipulate for a less degree of respon-
sibility than the common law imposes; and courts differ now only as to the
extent to which, under such stipulations, public policy will allow the strin-
gency of the ancient rule to be relaxed.

The English courts hold that carriers may stipulate for entire exemption from
responsibility, even for their own negligence.

The American courts generally hold, in view of the disadvantage under which
the consignor generally deals with the carrier, that they will reserve the right
to pass upon the reasonableness of the particular contract as made, and will
not allow the carrier to exempt himself by special contract from the conse-
quences of his own negligence or that of his agents.

The plaintiff brought an action against the defendants, a steamboat company,
for damage by a peril of the sea to goods delivered to them for transportation,
declaring against them as common carriers, and for the purpose of showing
the receipt of the goods by the defendants, offered in evidence a bill of lading
signed by them, in which was a provision that the company should not be
responsible for damage to the goods from any perils or accidents not resulting
from their negligence or that of their agents. Held—1. That the exemption
stipulated for was lawful and valid. 2. That there was a fatal variance
between the declaration and the proof. 3. That the defendants had not
waived all objection to the evidence on this ground by not objecting to it
when it was offered, inasmuch as it was admissible for the purpose of show-
ing that the defendants had received the goods, and that they had a right to
call upon the court to instruct the jury that, by reason of the variance, there
could be no recovery upon the declaration.

ASSUMPSIT against the defendants as common carriers;
brought to the Superior Court in Middlesex County. The
declaration was as follows: That on or about the 29th day of
May, 1875, the defendants were and for a long time previous
thereto had been common carriers of goods and merchandise
for hire, in and by certain steamboats of said defendants,
plying between the city of New York in the state of New
York, and the town of Middletown in the state of Connec-
ticut; and being such common carriers, on the day and year
last aforesaid, at the special instance and request of the
defendants, the plaintiff caused to be delivered to the defend-
ants at the city of New York aforesaid, divers goods and
merchandise, to wit, twelve barrels of sugar and one tierce

of rice, of the value of two hundred dollars, to be taken care of and safely carried by the defendants as such common carriers, in and on board of a certain steamboat belonging to the defendants, from said city of New York to said town of Middletown, and there at Middletown aforesaid to be safely delivered to the plaintiff, for certain freight and reward to be paid to the defendants; and the defendants in consideration thereof undertook and faithfully promised the plaintiff to take due and proper care of said goods and merchandise while they had the custody thereof for the purpose aforesaid, and to convey the same in good order and condition from said city of New York to said town of Middletown, and at said Middletown to deliver the said goods and merchandise to the plaintiff. Yet the defendants, not regarding their duty as such common carriers nor said promise and undertaking, while they had the custody of said goods and merchandise for the purpose aforesaid, took so little care of said goods and merchandise, and so carelessly and negligently conducted with reference to the conveyance of the same, that by the carelessness and negligence of the defendants the said goods and merchandise became and were greatly damaged and wholly lost to the plaintiff; to his damage, etc.

The case was tried to the jury, on the general issue, before *Granger, J.*

On the trial the plaintiff claimed, and offered evidence to prove, that in May, 1875, he ordered of Clark, Chapin & Holley of New York, twelve barrels of sugar and one tierce of rice, and that it was understood between them that the goods were to be shipped by the defendants' line of boats from New York to Middletown; that the goods on the 29th day of May, 1875, were delivered to the defendants by Clark, Chapin & Holley at New York, to be carried on their steamer "The State of New York" from New York to Middletown; and that a bill of lading, signed by the defendants' agent, being the same form of bill of lading given in all cases by the defendants, was delivered on the receipt of the goods by the defendants to Clark, Chapin & Holley. The bill of lading was as follows:

" New York, May 29th, 1875. Received of Clark, Chapin & Holley the following goods, the contents, condition and value of which are unknown, and marked as per margin.

S. T. CAMP, | Twelve barrels of Sugar,
*Middletown.* | One tierce of Rice.

" To be transported in any steamboat of its line to Hartford and landings on Connecticut River, and there delivered in like order and condition (the acts of God, public enemies, perils of sea and river navigation, collision, fire, and all other perils, dangers, and accidents not resulting from the negligence of the company or its agents, excepted, and with liberty to tow and assist vessels in distress,) unto the consignee thereof, or assigns, he or they paying freight for the said goods. The above mentioned goods are to be removed immediately upon arrival of the steamer at her place of destination. If not they may, at the company's option, remain on the dock, or without notice be removed and stored in a warehouse, at the owner's expense and risk of fire, loss, or injury." (Signed by the agent of the company.)

Also that the plaintiff never saw, or had knowledge of, the bill of lading until after the commencement of the present suit, when he procured the same for evidence in the case.

It was also shown that on the passage through Hellgate, the steamboat struck on a rock and sprung a leak, and that the goods were thereby damaged.

The defendants claimed, and requested the court to instruct the jury, that the contract between the parties and upon which the defendants were alone liable, if at all, was expressed in the bill of lading; and that it was the duty of the plaintiff to set out in his declaration the contract as contained in the bill of lading, and the exceptions as to liability contained in it; that there was a variance between the declaration and the proof, and that the plaintiff therefore could not recover; and that the goods were received by the defendants, not as common carriers, but under the contract contained in the bill of lading. The court did not so instruct the jury, but instructed them that the plaintiff might recover in the case, unless the defendants showed that the accident occurred

Camp v. Hartford & New York Steamboat Company.

through no want of reasonable care or prudence on their part. The defendants also requested the court to charge the jury that the burden of proof was upon the plaintiff to show negligence or want of due and reasonable care on the part of the defendants; but the court did not so charge the jury, but charged them that when the plaintiff had proved the delivery of the goods to the common carrier, and their non-delivery to the plaintiff, or their delivery to him in a damaged condition, the plaintiff had made a *primâ facie* case, and the burden of proof was then on the defendants to show that the loss or damage did not occur through any fault of theirs.

The jury returned a verdict for the plaintiff, for $165.55, and his costs. The defendants moved for a new trial for error in the charge of the court, and in the refusal to charge as requested.

*S. L. Warner* and *D. Chadwick*, in support of the motion.

1. This is an action of assumpsit. The declaration charges the legal responsibility of common carriers. That relation makes the defendants insurers of the goods against all loss, except those occurring by act of God and public enemies. If the defendants' liability was qualified to any extent, then they were not common carriers, but only bailees for hire, and the whole theory of their responsibility is entirely changed. Where assumpsit is brought against a common carrier, the action is based upon the implied promise growing out of his undertaking. But the law implies no promise where there is an express undertaking, and in all cases where the declaration counts upon such an implied promise the legal implication is negatived by proof of the special contract, and an express promise or contract different from the one implied can not be sustained unless there be some other consideration to support it. Angell on Carriers, § 434; 1 Stephen N. P., 238; 1 Archb. N. P., 41; *Hopkins* v. *Logan*, 5 Mees. & Wels., 241. In tort against a common carrier the allegation of the contract is mere inducement, but in assumpsit the contract is the very essence of the action, and great exactness is always demanded. *Latham* v. *Rutley*, 2 Barn. & Cres., 20;

*York & Newcastle Railway Co.* v. *Crisp.*, 14 Com. Bench, 527; *White* v. *Great Western Railway Co.*, 2 Com. Bench *N. S.*, 7. From these principles it follows that the defendants were not common carriers. They were not carriers to whom the law imputed their common law liability. They were not chargeable with all losses to these goods, excepting those caused by the act of God and public enemies. The exceptions of the contract change the whole tenor of their responsibility. In their behalf, the contract had for its object the restriction of their liability below that of common carriers. The restriction was the very essence of the contract. The rule as laid down by Chitty (1 Pl., 309,) is that "if the defendant's promise, or engagement, whether it be verbal, in writing or under seal, embody or contain as a part of it an exception or proviso which qualifies his liability, or in certain instances renders him altogether irresponsible, so that he was not in law absolutely bound; the declaration must notice the exception or proviso, or there will be a fatal mis-statement." *Clarke* v. *Gray*, 6 East, 564; *Miles* v. *Sheward*, 8 id., 7; *Bridge* v. *Austin*, 4 Mass., 114; *Stanwood* v. *Scovel*, 4 Pick., 422.

2. The court erred in charging the jury that the delivery of the goods imposed on the defendants the onus of accounting for the loss. The burden was on the plaintiff, to show that they were lost by the negligence of the defendants. As we have shown, the declaration on the contract should have stated the excepted perils and alleged that the loss did not occur thereby. As a logical consequence this imposes the burden of proof of negligence on the plaintiff. The charge of the court was in legal effect, that delivery of goods to a bailee for hire, and their non-delivery, was evidence of negligence. Such is not the case. Every presumption is made in favor of the bailee performing his duty. In the case of common carriers, the delivery of the goods and their non-delivery is evidence of a conversion, but this is on the ground that their undertaking is that of an insurer, and even then trover could not be sustained until after a demand and refusal, which in law is a conversion. The rule, for obvious

reasons, is different against special carriers. They are bailees for hire. Story on Bailments, § 573; *N. Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How., 344; *Western Transportation Co.* v. *Downer*, 11 Wall., 134; *Lamb* v. *Camden & Amboy R. R. Co.* 46 N. York, 271; *Cochran* v. *Dinsmore*, 49 id., 249.

*W. T. Elmer* and *A. W. Bacon*, contra.

1. It is always necessary to declare upon a contract according to its legal effect. This often cannot be done by setting out the contract according to its terms. 1 Chitty Pl., 305; *Bacon* v. *Page*, 1 Conn., 404; *Sherman* v. *Goble*, 4 id., 246; *Andrews* v. *Williams*, 11 id., 326; *Lent* v. *Padelford*, 10 Mass., 230. The legal effect of this contract was that the defendants, as insurers of freight, should safely carry the goods of the plaintiff, and be liable for all accidents resulting from the negligence of the company or its agents; which negligence is charged in the declaration and found true by the jury. Under such circumstances it is not necessary that the contract should have been set out. *Clark* v. *Richards*, 1 Conn., 53.

2. The obligation of a common carrier does not arise out of contract in the usual sense of that expression, but it is declared by law, and his responsibilities are fixed by considerations of public policy. *Thurman* v. *Wells*, 18 Barb., 500, 513. If a common carrier attempts to make a special contract exempting himself from the consequences of his own negligence, such a contract is nugatory and void. *N. York Central R. R. Co.* v. *Lockwood*, 17 Wall., 357; *Welch* v. *Boston & Albany R. R. Co.*, 41 Conn., 333.

3. The requirements of the doctrine of variance which once prevailed have been abolished by modern adjudications. *Allen* v. *Jarvis*, 20 Conn., 47. If this doctrine were in full force it would have no application in this case, for it was the duty of the defendants to have taken this objection at the time when the bill of lading was introduced to prove the delivery of the goods to the carrier, instead of using such a technicality to set aside the verdict of a jury. *Lund* v. *In-*

*habitants of Tyngsboro'*, 11 Cush., 563, 568; Goulds Pl., ch. 5, § 99.

4. With reference to the burden of proof a vast array of authorities might be cited if necessary. " In case of accident, the law *primâ facie* implies negligence, and to show the contrary the *onus probandi* lies upon the defendant." 2 Greenl. Ev., § 219; Story on Bailments, §§ 491, 529; *Alden v. Pearson*, 3 Gray, 342; *Hollister* v. *Nowlen*, 19 Wend., 240; *Peck* v. *Weeks*, 34 Conn., 152.

LOOMIS, J. In an action of assumpsit, where the contract is of the very essence of the action, greater exactness in pleading is demanded than where the action is in tort, and the contract is referred to merely by way of inducement. In an action on a contract, even a trivial variation is often fatal, because it destroys the identity of the contract. *Curley* v. *Dean*, 4 Conn., 264; *Russell* v. *South Britain*, 9 Conn., 512.

The declaration in the case under consideration predicates the defendants' liability, not upon negligence merely, but upon the fact that the defendants are common carriers, and as such received the goods in question to be safely kept, carried, and delivered to the plaintiff at Middletown. In short, the contract set up makes the defendants insurers of the goods so received against all losses except those occurring from the act of God or the public enemies. The contract proved is the one embodied in the bill of lading, which is incorporated in the motion. If this is valid as a contract it clearly reduces the defendants' liability to that of an ordinary bailee for hire, making a very substantial variation between the allegation and the proof.

It is conceded now by all modern authorities that common carriers may stipulate for a diminished degree of responsibility from that which is imposed upon them by the rigorous rules of the common law. Courts now differ only as to how far considerations of public policy will allow the stringency of the ancient rule to be relaxed by mutual special agreement between the parties. The English courts now hold that it is

possible for carriers to stipulate with the owner or consignor of goods for entire exemption from responsibility in the transportation, not excepting negligence. *Gallin* v. *London & North Western Railway Co.*, Law Reps., 10 Q. B., 212. The American courts generally hold that, inasmuch as the parties are not in equally independent positions, and the stress of circumstances might virtually compel the owner of the goods or his consignor to submit to the carrier's demands, they will reserve the right to pass upon the reasonableness of the particular contract as made, and they will not allow the carrier to exempt himself by special contract from the consequences of his own negligence or that of his servants and employees. But it seems now to be everywhere conceded that such a contract as was made in this case, which did not attempt to exempt the defendants from the consequences of their negligence, will be sustained. *York Co.* v. *Central R. R. Co.*, 3 Wall., 107 ; *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, 6 How., 382; *Railroad Co.* v. *Lockwood*, 17 Wall., 357 ; *Grace* v. *Adams*, 100 Mass., 505 ; *Adams Express Co.* v. *Haynes*, 42 Ill., 89; *Lamb* v. *Camden & Amboy R. R. Co.*, 46 N. York, 271; *Cochran* v. *Dinsmore*, 49 N. York, 249; *Welch* v. *Boston & Albany R. R. Co.*, 41 Conn., 333.

The courts in the state of New York at first adopted principles substantially in accord with the cases above cited, but they have been gradually relaxing the rule of responsibility for carriers in favor of special contracts, until they now hold that such contracts, even to cover negligence, may be upheld, provided the language used by the parties is sufficiently clear and specific to indicate that such was the intent of the parties. *Magin* v. *Dinsmore*, 56 N. York, 168; *Knell* v. *U. States & Brazil Steamship Co.*, 33 N. York, 423.

We have no doubt but that the contract in the case at bar was valid within the purview of all the modern authorities. It would be sufficient for the purposes of this case if it was only sustained by the principles adopted by the courts of New York, where the contract was made, as the laws of that state would govern.

Our conclusion therefore is, that the contract proved is

Camp *v.* Hartford & New York Steamboat Company.

essentially different from that alleged, and that there is a fatal variance between the allegations and the proof. As sustaining this result we refer to *Latham* v. *Rutley*, 2 Barn. & Cress., 20; *Crisp* v. *York, Newcastle & Berwick R. R. Co.*, 14 Com. Bench R., 527; *White* v. *Great Western Railway Co.*, 2 Com. Bench N. S., 7; 1 Chitty's Pleading, 309.

The plaintiff claims that the defendants waived the right to insist on this variance by omitting to object to the bill of lading when first offered in evidence. In some cases such an omission would be held a waiver, but we think it ought not to be so held under the circumstances of this case. The bill of lading was offered by the plaintiff for the purpose of showing the receipt of the goods by the defendants, for which purpose it was clearly admissible. It must therefore have been received, notwithstanding an objection, and it was as well to ask the court in its charge to give construction and effect to it, as to have had a ruling at the time it was offered. And besides, the bill of lading was necessary for the defense, and would have been introduced by the defendants to show that the contract declared on was not the contract under which the goods were received. And furthermore, it was the duty of the court to instruct the jury correctly as to the foundation of the defendants' liability, and whether it arose out of this special contract or from the common law relation of common carriers. The instructions asked for on this point were correct and adapted to the case; but the instructions as given were incorrect. So that, at all events, the defendants are entitled to a new trial; which is advised.

In this opinion the other judges concurred; except PARDEE, J., who did not sit.