## CHARLES COUPLAND vs. THE HOUSATONIC RAILROAD COMPANY.

New Haven & Fairfield Cos., Oct. T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

A complaint alleged that the defendant, a railroad company, undertook as a common carrier, for a valuable consideration, to transport a mare and colt for the plaintiff over the line of its road from *G* to *D*, and that the animals were injured through the defendant's negligence in the transportation. The defendant's contract was expressed in a bill of lading, which exempted it from liability for damage from certain specified causes, none of which covered the negligence charged. Held that there was no variance.

In respect to every injury except those specially excepted the defendant was subject to all the responsibilities of a common carrier.

Among the exceptions were " breaking " and " chafing." Held not to have been intended to apply to live stock, and that the breaking of the leg of the mare was not covered by them.

The common law rule which made carriers practically insurers of property while being carried by them, has, from the necessity of the case, been in a measure relaxed in the case of live stock.

Carriers are bound to furnish safe and properly constructed cars in which to transport live stock, and suitable with reference to the kind and value of the stock.

The railroad company placed the mare and colt in an ordinary box freight car, the roof of which was so low that the mare on lifting her head struck it, and it was without partitions, so that she was thrown down by the motion of the cars and her leg was broken. But the plaintiff's agent, who had charge of the animals, was told of the defects of the car, and offered a more suitable one if he would pay a higher but reasonable freight, but he decided to have this one used, and padded the rafters and placed a stuffed hood on the mare's head. Held that the jury should have been charged that it was competent for them to find from these facts alone that the plaintiff assumed the risks incident to the unsuitableness of the car.

The plaintiff claimed that his agent on the way informed the defendant's agents in charge of the train that the mare was becoming frightened and acting badly and was in danger of being killed by further transportation, and requested them to set the car on a side track at a place where they were next to stop. The court charged the jury that if they found the request to have been made it was the duty of the defendant's agents to have complied with it if it could reasonably have been done. Held to be correct.

The defendant offered in evidence a way-bill, in the ordinary form, describing the property carried, its destination and value, the names of

the shipper and consignee, and the rate of charge.  It was for the convenience of the company only, and had not been brought to the knowledge of the plaintiff.  Held to be admissible as containing matter to b considered by the conductor in determining whether to interrupt the transportation as requested, as it showed the value of the freight, and how much further it was to be carried, and was, so far as appeared, his only source of information concerning the property.

Where a contract is fairly made between a shipper and a carrier agreeing on the valuation of the property carried, with the rate of the freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant valuations of the property after a loss has occurred.

The bill of lading gave one hundred dollars as the value of the mare.  The plaintiff now claimed that she was worth two thousand dollars.  Held that the liability of the defendant was limited to the value stated in the bill of lading.

And this, although the plaintiff was not informed and did not understand, in giving the value, that he would be limited to that sum if the mare was injured.

The carrier may properly regulate his care of property carried by him by its value and the amount of his responsibility, and it is due to him that he should be correctly informed by the shipper of the value of the articles.

Where the bill of lading described the freight as one horse and one colt, and the term " value $100 " was so placed that a question arose as to whether it applied to the horse alone or to the horse and colt, it was held that the plaintiff was not entitled to a charge that " the statement of value affected only the horse and had no reference to the colt," but that it was for the jury to say, upon an inspection of the bill of lading, which was meant.

A pamphlet hanging in a railroad company's office, containing rules and rates with respect to freight, is not of itself constructive notice of its contents to a shipper of freight.

[Argued October 27th, 1891—decided February 29th, 1892.]

ACTION to recover the value of a mare and colt injured while being transported by the defendant railroad company; brought to the Superior Court in New Haven County.

The complaint alleged as follows :—That on the 25th day of April, 1889, the plaintiff was the owner of a valuable mare and colt, the mare being then worth the sum of $2,000, and the colt the sum of $500 ; that said mare was on that

day at Great Barrington in the state of Massachusetts ; that the defendant was then and still is a common carrier by railroad, operating a line of railroad from said Great Barrington to the town of Danbury in this state ; that on said day the defendant undertook, as a common carrier, for a valuable consideration received of the plaintiff, to transport said mare and colt over the line of its railroad from said Great Barrington to said Danbury; and that the plaintiff by his agent delivered said mare to the defendant at said Great Barrington, and the defendant received the same on board of a box freight car. The complaint then averred the unsuitableness of the car, as being of insufficient height and without partitions, by reason of which the mare hit her head violently against the roof, and became greatly excited, and finally, by a sudden side movement of the car, was thrown down and her leg broken, by reason of all which she soon after died; and the colt, being newly foaled, died also. It also averred that the plaintiff's agent, soon after the train started, finding that the mare was in great danger of injury, requested the conductor to leave the car upon a side track at a station they were about to stop at, but that he refused to do so.

The case was tried to the jury, before *F. B. Hall, J.*, and a verdict rendered for the plaintiff. The defendant appealed on the ground of error in the charge and rulings of the court. The case is fully stated in the opinion.

*S. E. Baldwin*, for the appellant, cited—as to variance between the contract declared on and proved, *Russell* v. *South Britain*, 9 Conn., 508, 522; *Camp* v. *Hartford & N. York Steamboat Co.*, 43 id., 333, 335, 340; *Lake Shore & Mich. Southern R. R. Co.* v. *Bennett*, 89 Ind., 457, 469; *Snow* v. *Indiana, Bloomington & W. R. R. Co.*, 109 id., 422; *Boylan* v. *Hot Springs R. R. Co.*, 132 U. S. R., 146, 150; *Austin* v. *Manchester, Sheffield & Lincolnshire R. Co.*, 16 Ad. & Ell. N. S., 600. As to the plaintiff having accepted the car, *East Hartford* v. *Am. Nat. Bank*, 49 Conn., 539; *Evans* v. *Fitchburg R. R. Co.*, 111 Mass., 142, 144; *Smith* v. *New Haven & Northampton Co.*, 12 Allen, 531, 534; *Upton* v.

*Tribilcock*, 91 U. S. R., 50. As to the request to switch off at Ashley Falls, *Squire* v. *N. York Central R. R. Co.*, 98 Mass., 243, 248. As to the law governing the validity of the contract of shipment, *Camp* v. *Hartford & N. York Steamboat Co.*, 43 Conn., 340. As to the construction of the release, *Squire* v. *N. York Central R. R. Co.*, 98 Mass., 239, 246; *Hill* v. *Boston, Hoosac Tunnel & W. R. R. Co.*, 144 id., 284; *Morrison* v. *Phillips & Colby Construction Co.*, 44 Wis., 405; *Griswold* v. *N. York & N. Eng. R. R. Co.*, 53 Conn., 371, 388. As to the agreed valuation, *Lawrence* v. *N. York, Prov. & Boston R. R. Co.*, 36 Conn., 63, 74; *Squire* v. *N. York Central R. R. Co.*, 98 Mass., 245, 248; *Graves* v. *Lake Shore & Mich. R. R. Co.*, 137 id., 33; *Maguire* v. *Dinsmore*, 62 N. York, 35, 44; *S. C.*, 70 id., 410; *Hart* v. *Pennsylvania R. R. Co.*, 112 U. S. R., 331, 340, 343; *Manchester, Sheffield & Lincolnshire R. Co.* v. *Brown*, L. R., 8 App. Cas., 703, 712. And that the plaintiff was in fault for not engaging a more suitable horse car, *Harris* v. *North Indiana R. R. Co.*, 20 N. York, 232, 235.

*J. W. Alling*, for the appellee, cited—with respect to the liability of the defendant as a common carrier upon the facts, *Camp* v. *Hartford & N. York Steamboat Co.*, 43 Conn., 333, 340; *Holsapple* v. *Rome, Watertown & Ogdensburgh R. R. Co.*, 86 N. York, 275; *Nicholas* v. *N. York Central R. R. Co.*, 89 id., 370; *Mynard* v. *Syracuse, Bing. & N. York R. R. Co.*. 71 id., 180; *McManus* v. *Lancashire & Yorkshire R. Co.*, 4 Hurlst. & Nor., 327, 349; *Moore* v. *Great Northern R. Co.*, L. R., 10 Ireland, 95. As to the duty of the defendant to furnish a suitable car for the transportation of the mare, *Pratt* v. *Ogdensburgh & Lake Champlain R. R. Co.*, 102 Mass., 557, 567; *Smith* v. *N. Haven & Northampton Co.*, 12 Allen, 531; *Potts* v. *Wabash, St. Louis & Pacific R. R. Co.*, 17 Mo. App., 394; *Mason* v. *Missouri Pacific R. R. Co.*, 25 id., 473; *Welsh* v. *Pittsb., Fort Wayne & Chicago R. R. Co.*, 10 Ohio St., 65; *Hopkins* v. *Westcott*, 6 Blatch., 67; *Ogdensburgh & Lake Champlain R. R. Co.* v. *Pratt*, 22 Wall., 123, 134. As to the duty of the defendant to switch

off at Ashley Falls, *Bills* v. *N. York Central R. R. Co.*, 84 N. York, 5. And as to the specification of value not being sufficient to limit the recovery, *Black* v. *Goodrich Transp. Co.*, 55 Wis., 319; *U. S. Express Co.* v. *Blackman*, 28 Ohio St., 144; *Maguire* v. *Dinsmore*, 56 N. York, 168; *S. C.*, 70 N. York, 410; *Kansas City etc. R. R. Co.* v. *Simpson*, 30 Kansas, 645; *The City of Norwich*, 4 Ben., 271; *Illinois Central R. R. Co.* v. *Adams*, 42 Ill., 474; *Toledo, Wabash & W. R. R. Co.* v. *Thompson*, 71 id., 434; *Keeney* v. *Grand Trunk R. R. Co.*, 59 Barb., 104; *Doan* v. *St. Louis, Keokuk etc., R. R. Co.*, 38 Mo. App., 508; *Louisville & Nashville R. R. Co.* v. *Kelsey*, 89 Ala., 287; *Grogan* v. *Adams Express Co.*, 114 Penn. St., 523; *Southern Express Co.* v. *Seide*, 67 Miss., 609; *Ashendon* v. *London, Brighton & So. Coast R. Co.*, L. R., 5 Exch. Div., 190; *Wyld* v. *Pickford*, 8 Mees. & W., 443; *Sleat* v. *Flagg*, 5 Barn. & Ald., 342.

SEYMOUR, J. It appears from the record in this case that the answer to the complaint contained two defenses, to the second of which a demurrer was entered.

The demurrer was sustained upon grounds so entirely peculiar to the particular case, and of no general applicability, that we need only say, for the information of the parties, that in our judgment the second defense contained nothing material not already sufficiently averred in the first defense; and that the defendant suffered nothing in consequence of the action of the court sustaining the demurrer. The complaint did not allege that the injury was occasioned by chafing or collision. On the contrary it alleged another cause which precluded such claim.

Again, the first defense had already set out the bill of lading containing the agreement stated in the second defense, and had alleged that it was made with Parley A. Russell, who described himself as agent for the shipper. The record conclusively shows that the defendant was deprived of no advantage by the failure of the first defense to state more particularly than it did that the bill of lading was a contract between the plaintiff and the defendant. The court treated

it as such, and, in the charge to the jury, tells them that it seems to be an undisputed fact that Mr. Russell signed it as the plaintiff's agent. The defendant has no just ground to complain because the demurrer was sustained.

At the trial the defendant introduced the following bill of lading, which was set forth in its answer :—

" Housatonic Railroad. Great Barrington Station, April 25, 1891.

" In consideration of the Housatonic Railroad Co., and also in consideration of any corporation whose roads connect therewith, receiving and carrying, viz. :

" One Horse, value          $100.

" One Colt.

" Consigned to Rundle & White, Danbury, Conn. Freight prepaid.

" The owner and shipper hereby agrees that none of said corporations shall be liable for damage or loss, of or to all or any part of said freight, by reason of breaking, chafing, weather, fire or water, except where collision or running from the track, resulting from negligence of the corporation's agents, shall cause the same. And the shipper and owner hereby promises to pay the freight, and to claim no deduction therefrom by reason of any damage or loss.

" L. F. Jones, Station Agent.

" Signed in duplicate,

" Parley A. Russell, Agent for Shipper and Owner."

The defendant requested the court to charge the jury that, inasmuch " as the declaration charges the defendant merely as a common carrier, but the proof is that the mare and colt were shipped under a special contract, the proof does not support the declaration, and the verdict must be for the defendant." This the court declined to do, but charged that, in view of the complaint and of all the pleadings and of the evidence offered by the plaintiff, the suit was to be regarded as an action to recover of the defendant upon the ground of its negligence.

The refusal of the court to charge as requested by the defendant was fully justified. If the animals had been

shipped under a special contract which undertook to completely exonerate the defendant from the consequences of its own negligence, the request would have been proper. But in this case there is no attempt on the part of the defendant to limit its common law liability, except by reason of breaking, chafing, weather, fire or water, where collision or running from the track, resulting from negligence of the corporation's agents, does not cause the same.

It is argued by the defendant that the injuries which the mare sustained and which occasioned her death, namely, the breaking of a leg and other severe injuries occasioned by her being thrown down by a sudden side movement of the car, are properly described by the words " breaking " and " chafing " in the bill of lading, and are, therefore, injuries against which the defendant undertook to exempt itself from responsibility even for its own negligence, unless such negligence caused collision or running from the track, which in this case it did not. Such argument is unsound. None of the words, " breaking, chafing, weather, fire or water," used in the bill of lading to describe the occasion of the damage against which the defendant limits its liability, are apt or appropriate to describe the injuries complained of, nor injuries to live freight at all. It is evident that the bill of lading used on this occasion was one ordinarily used for goods, wares and merchandise other than living animals, or at any rate was only appropriate for such property. In *Camp* v. *Hartford & N. York Steamboat Company*, 43 Conn., 333, twelve barrels of sugar and one tierce of rice were shipped under a bill of lading which contracted to transport and deliver them in the order and condition in which received, " the acts of God, public enemies, perils of sea and river navigation, collision, fire, and all other perils, damages and accidents not resulting from the negligence of the company or its agents, excepted." On the passage through Hellgate the steamboat struck on a rock and sprung a leak, whereby the goods were damaged. The plaintiff sued the steamboat company as common carriers, and himself introduced the bill of lading in evidence. The defendants

claimed, and requested the court to instruct the jury, that the contract between the parties upon which they were alone liable, if at all, was expressed in the bill of lading, and that it was the duty of the plaintiff to set out in his declaration the contract and the exceptions as to liability contained therein; that there was a variance between the declaration and the proof, and that the plaintiff therefore could not recover; and that the goods were received by the defendant not as a common carrier but under the contract contained in the bill of lading. The court declined so to instruct the jury, but instructed them that the plaintiff might recover unless the defendant showed that the accident occurred through no want of reasonable care or prudence on its part.

Upon a motion for a new trial for error in refusing to charge as requested, this court held that there was a fatal variance between the allegations of the declaration and the proof. It held it to be well settled that common carriers may stipulate for a less degree of responsibility than the common law imposes, and that, while the English courts hold that they may stipulate for entire exemption, even for their own negligence, the courts in this country differ only as to the extent to which public policy will allow the stringency of the ancient rule to be relaxed, and generally hold that they will reserve the right to pass upon the reasonableness of the particular contract made, and will not allow the carrier to exempt himself by special contract from the consequences of his own negligence or that of his agents.

That case, however, differs from the case at bar. To be sure the bill of lading in the latter undertakes to exempt the defendant from responsibility for all damage to freight by reason of breaking, chafing, weather, fire or water, even though occasioned by its negligence, other than negligent collision or running off the track, and, in respect to freight to which that contract applied, we should hold that the contract for exemption from consequences of its own negligence could not be sustained.

But there is no contract that the defendant shall be exempted from damages occasioned by its own negligence in

failing to provide a suitable car, or for so transporting the mare that she is thrown down so as to break her leg and receive other severe injuries of which she dies. In respect to every injury except those caused by breaking, chafing, weather, fire or water, or by collision or running off the track through the negligence of its agents, the defendant is subject to all the responsibilities of a common carrier. No attempt is made to limit such responsibility. The bill of lading contains no contract respecting them.

The common law rule which made carriers practically insurers of property while being carried by them, has however, from the very necessity of the case, been in a measure relaxed in the carriage of live stock. As suggested in Edwards on Bailments, § 680, the carrier can store away goods so as to secure their safety; but a carrier of animals by a mode of conveyance opposed to their habits and instincts, has no such means of securing absolute safety. They may die of fright; they may, notwithstanding every precaution, destroy themselves in attempting to break away from the fastenings by which they are secured, or they may kill each other by crowding, plunging or goring; the motion of the cars, their frequent concussions, the scream of the engine, may often create a kind of frenzy in the swaying mass of cattle, and the carrier is not held liable for injuries or losses arising from the irrepressible instincts of this living freight, which he could not prevent by the exercise of reasonable care. While he is not an insurer against injuries arising from the nature and propensities of the live stock carried by him, yet his liability is not limited to a careful conveyance of the cars containing them. He must provide in advance suitable means to secure their conveyance, and he must use those means with all reasonable diligence and forethought in the varying circumstances arising in the business.

To apply these principles to the case before us: The plaintiff sued the defendant as a common carrier of live stock. The defendant, as one defense, set up the bill of lading, and claimed that the mare and colt were shipped

under its special provisions, which varied its ordinary liability, and therefore the proof did not support the declaration. The plaintiff claimed in reply that the injuries named in the bill of lading for which the defendant undertook to limit its liability, did not refer to injuries to live stock at all, and if they did, no exemption was provided for the injuries complained of, and therefore, in respect to the care required in transporting and to injuries of the nature of and occasioned as those in question, the defendant took the mare and colt as common carriers simply and not under a special contract. If this was true there is no variance.

The facts do not present a question of technical variance. The plaintiff does not set out one contract in his complaint and prove another. He claims to recover against the defendant as a common carrier, and introduces no proof inconsistent with such claim, and insists that the proof introduced by the defendant is not inconsistent with that claim. It is a question of construction of the contract contained in the bill of lading, and the court was right in instructing the jury that there was no such variance between the allegations and the proof as required a verdict for the defendant. The question was whether the bill of lading, properly construed, prevented the plaintiff from recovering from the defendant under its common law liability as a carrier of live stock. The court thought it did not, and we think the court was right.

The defendant insisted that, if its claim of variance was not sustained, then it was not to be held as an insurer of the property, it being live freight; that no recovery could be had except upon proof of its negligence; that it was not negligent in respect to the car used for transportation, nor in respect to the injury that occurred through the mare's fright, etc.; nor in refusing, which it said it did not, to take the car off at Ashley Falls; and that, if liable at all, the damage could be but one hundred dollars. That the defendant would not be held to be an insurer of the mare and colt we have already seen. Negligence on its part must be shown before the plaintiff can recover.

And the instructions of the court to the jury,—" that if they found that the defendant was not guilty of either of the acts of negligence claimed, and so that the injury occurred by reason of the propensities of the animal and its nervousness and fright, without negligence of the defendant, their verdict should be in its favor," were unexceptionable.

The next question relates to the law respecting the car furnished by the defendant for the transportation of the animals, and its acceptance by the agent of the plaintiff.

Carriers are bound to furnish suitable, safe and properly constructed cars in which to transport live stock; suitable in reference to the kind and value of stock carried. It is said that they cannot escape this obligation by calling attention to the defective condition of the car at the time the stock is received on board. If however the defect relates to the commodiousness of the car, and the possible effect of larger accommodations upon the particular animal to be carried, and the question is discussed between the shipper and the carrier, who informs him that a more commodious car will be furnished if he is willing to pay a larger rate of freight, (such larger rate not being unreasonable,) and the shipper decides to take the cheaper car, himself attempting to guard against the want of room, it is a matter to be considered.

We cannot but think that the charge unduly limited the field of inquiry. It instructed the jury, as requested by the plaintiff's fourth request, that " mere suspicion, without notice to Mr. Russell " (the shipper's agent) " that the car offered for the transportation of the animals was not suitable for the purpose, and the mere use of the car after efforts on his part to guard against the defects in the car by padding the head of the mare and the cross-pieces, did not exempt the defendant from liability from loss caused, while the animals were in the course of transportation, by the defendant's negligence in furnishing such defective car, without proof of a distinct agreement on the part of Mr. Russell, as agent of the plaintiff, to assume the risk arising from the defects of the car."

In the first place, the remark with regard to mere suspicion without notice to the plaintiff's agent that the car was not suitable, was not adapted to the facts of the case, and might easily mislead the jury.

It was not a case of mere suspicion without notice. The plaintiff's agent knew that the car in which it was proposed to ship the animals was an ordinary box freight car. The finding states that it appeared in evidence that the agent before shipping the animals saw the car which was used and knew of the alleged defects in its construction, namely, of the alleged fact that the roof and rafters of the car were so low that a horse on lifting its head was liable to strike the same, and that the car was without stalls or partitions in the inside, and caused precautions to be taken for their protection by padding the rafters of the car and placing a stuffed hood upon the mare, and by constructing a pen for the colt.

Instead of a case of mere suspicion it was a case of actual knowledge of the existence of the very defects which were claimed to constitute the defendant's negligence, and an attempt by the plaintiff's agent to guard against them. Then again it appeared in evidence that the agent was informed that the defendant had two special horse cars which were provided with passenger car springs and buffers, and which had padded stalls and arched rafters, and that the animals could be shipped in one of those cars, at the same rate and upon the same terms as by the box freight car, upon the payment of the additional sum of ten cents per mile for the use of such special car.

In other words, according to the defendant's claim, the plaintiff tendered a mare and colt, which he stated were worth $100, for transportation. Before the animals were shipped the plaintiff saw the box car in which they were subsequently shipped, knew of its alleged defects, was informed that the defendant had special horse cars free from the alleged defects in which the animals could be shipped for an additional charge, and did not avail himself of the

special car, but attempted to remedy the defects of the box car, and the animals were sent in it without his objection.

Now, had not the jury a right to find, from these facts alone, that Mr. Russell, as agent of the plaintiff, assumed the risk arising from those defects of the car? It was not necessary to prove that he expressly said—" I see that the car is low from floor to roof, and I hear your offer of better accommodations for a higher price, but decline it and will my-self assume the risk arising from such defects of the box car;" nor words of like import. His acts, viewed in the light of the surrounding circumstances, might evidence his as-sumption of the risk as clearly as his distinct agreement so to do.

The defendant was bound to furnish a suitable car for the transportation of horses. It was still the duty of the jury to inquire whether it did so. If the box car was unsuitable for the transportation of ordinary horses of the value placed by the plaintiff's agent on these, then the defendant might be liable though it informed the plaintiff of its better ac-commodations for a higher price. But if the jury found that the box car was suitable for the ordinary business of transporting horses, though lower between joints than the special cars furnished at a higher price, that the plaintiff was aware of such defects and was informed about such special cars, and the additional price charged for them was not unreasonable, and that, thereupon, he attempted to guard against the possible effect of the lower space and acquiesced in the use of the car which was used, then it was competent for them to further find, from such facts alone, that the plaintiff assumed the risks incident to the defect in question. We think the defendant was entitled to a charge to that effect, and that the instructions given were too restrictive in this particular.

We now come to consider the effect of a valuation by the shipper of the property offered for transportation.

The plaintiff requested the court to instruct the jury that " the specification of value, in the supposed bill of lading, is insufficient to shield the defendant, if otherwise liable,

from the full damages, if they were caused by its own negligence, as claimed by the plaintiff."

The defendant on the contrary requested the court to charge that "the plaintiff is bound by the valuation of the stock shipped at $100, stated in the contract, and could in no event recover more than that sum as damages for any injury to the same."

The court declined to charge as requested by the defendant, and so stated to the jury, but instructed them as follows:—"Where the injury to property is caused by the carrier's negligence he is liable to the full value of the property, unless there was a distinct agreement, fairly obtained, that his liability should be limited to such agreed valuation.  Applying these principles to the case, I charge you that if the loss in question was caused by the negligence of the defendant as alleged, the defendant is liable for the full value of the goods, unless you find that there was a distinct agreement between the defendant and the plaintiff's agent, fairly obtained, limiting the defendant's liability to the valuation named in the release, one hundred dollars.  If you find that there was such an agreement, even though the loss was occasioned by the defendant's negligence, the defendant is liable for the injury to the property only to the amount of the value named in the release."

Again, after calling attention to a claim that the plaintiff's agent signed the release without reading it, and stating that, nevertheless, if, when he signed it, it contained the statement of the value of the property, he is chargeable with a knowledge of such statement, the court adds:—"But the release did not contain an express stipulation limiting the liability of the railroad company to the valuation stated in the release.  I shall charge you that the mere act of signing this particular instrument by Mr. Russell, as the plaintiff's agent, without fraud or concealment on his part of the value of the goods, without any information that such statement of value would affect the liability of the company, and without supposing that it would, does not exempt the railroad company

from liability beyond the valuation stated in the release, for the loss or injury occasioned by the defendant's negligence."

It is a rule established by some of the best authorities, and one which we recognize as expressing the law, that when a contract is fairly made between shipper and carrier agreeing on the valuation of the property carried, with the rate of the freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations of the property after a loss has occurred. *Hart v. Pennsylvania R. R. Co.*, 112 U. S. R., 331; *Squire* v. *N. York Central R. R. Co.*, 98 Mass., 239; *Graves* v. *Lake Shore & Michigan R. R. Co.*, 137 Mass., 33; Schouler's Bailments & Carriers, § 457.

But we are met here with a further question. In case of loss through the negligence of the carrier is the shipper bound by the valuation which he, in answer to the carrier's inquiry, gave to the property when shipped, and which value was thereupon inserted in the bill of lading, although the bill of lading is silent as to the effect of such valuation upon the shipper's liability, and he had no actual information, and did not suppose, that his statement of value would affect the liability of the company in respect to the damages they would be liable to pay in case of loss?

The defendant, as we have seen, claimed that the plaintiff was bound by the valuation he himself gave of the stock when it was shipped. The court said—No, unless there was a distinct agreement fairly obtained limiting its liability to such valuation; that, inasmuch as the bill of lading did not contain such express stipulation, the mere act of signing it by the shipper's agent, without fraud or concealment on his part of the value of the goods and without supposing that his statement of value would affect the liability of the car-

rier, does not exempt the latter from liability beyond the
valuation stated in the release.

It is not clear what the court meant by the words " with-
out fraud or concealment," when speaking of the mere act
of signing the bill of lading by the agent without fraud or
concealment on his part of the value of the goods, etc.   If
the shipper through his agent signed a bill of lading in which
the value of the property was stated in accordance with his
own valuation at one hundred dollars, which in fact, as he
now claims, was worth two thousand dollars, does the fact
that his first valuation was an honest mistake affect the
question of the carrier's liability?   And is that the mean-
ing of the charge?   If he knew the mare to be worth a
much larger sum when he gave her value at one hundred
dollars, there was at least concealment, even though he did
not know or believe that such incorrect valuation would af-
fect the carrier's liability for damages in case of loss, and
perhaps thought it would only enable him to get a lower
rate of freight.

The court evidently meant to say in effect, as appears
from the entire charge, that unless there was an express, dis-
tinct contract that the value placed upon the property should
determine the amount of damages to be recovered in case of
loss through the carrier's negligence, a verdict should be ren-
dered for the full value of the property lost.   No case was
cited by counsel where precisely that question was decided.
That the valuation made by the shipper affects the care re-
quired to be taken of it in transportation by the carrier,
without any express, distinct agreement to that effect, will
not be questioned.   No one but understands that his prop-
erty valued at fifty dollars will get, and the law will re-
quire, less care and protection in transporting it than prop-
erty valued at a thousand dollars ; and that he will pay less
for such transportation though it is of equal bulk.   Upon
the question whether the carrier was negligent in transport-
ing the property, its value, as stated by the shipper and re-
lied on by the carrier, in the absence of anything which

should cause him to discredit such valuation, would be conclusive so far as value is an element of the inquiry.

It has been held that, if the owner conceal the value or nature of the article, the carrier will not be liable for its loss. Thus, Judge KENT, (2 Commentaries, part 5, lecture 40,) after stating the general rule that a common carrier is answerable for the loss of a box of goods though ignorant of its contents and though those contents be ever so valuable, unless he has made a special acceptance, says:— " But the rule is subject to a reasonable qualification, and if the owner be guilty of any fraud or imposition in respect to the carrier, as by concealing the value or nature of the article, he cannot hold him liable for the loss of the goods. Such an imposition destroys all just claims to indemnity, for it goes to deprive the carrier of the compensation which he is entitled to in proportion to the value of the article entrusted to his care and the consequent risk which he incurs, and it tends to lessen the vigilance that the carrier would otherwise bestow."

Says Schouler, in his work on Bailments & Carriers, § 423, " A carrier is to be charged with no responsibility beyond what the thing appears, on its face and the proof at command, to deserve ; and the sender whose conduct induces him to relax his guard, or goes to deprive him of his just compensation, puts himself without the pale of justice."

That the value of the article, as stated by the owner, is a proper element to be considered in measuring the care to be bestowed upon it by the carrier, is, we repeat, beyond question.

The reasoning of the court in *Hart* v. *Pennsylvania R. R. Co.*, *supra*, tends very strongly to uphold the defendant's claim, that in case of loss through its negligence the plaintiff is bound by his own valuation of the property when delivered for transportation, though there was no express agreement to that effect. There was an express agreement in that case, but the court seems to discuss the question upon general principles. After quoting the above passage from KENT, it says respecting it:—" This qualification of the

liability of the carrier is reasonable and is as important as the rule which it qualifies. There is no justice in allowing the shipper to be paid a large value for an article which he has induced the carrier to take at a low rate of freight on the assertion and agreement that its value is a less sum than that claimed after a loss. It is just to hold the shipper to his agreement, fairly made, as to value, even when the loss or injury has occurred through the negligence of the carrier. The effect of the agreement is to cheapen the freight and secure the carriage if there is no loss; and the effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract. The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

It would seem as if good morals required that the same rule should hold good in respect to a statement of value made by a shipper, even though there is no express contract that any loss that might occur should be measured by such

statement. A shipper should not be allowed to reap the benefit of his statement of value if there is no loss, and to repudiate it in case of loss. The same rule of estoppel would seem to apply to a statement of value, the natural consequence of which causes the carrier to treat freight in a certain way resulting in its loss, as would apply in case of an agreement that a statement of value should govern in case of loss. " Actual notice given by a common carrier to his customer, specifying the terms on which he receives and carries goods, becomes parcel of the contract when it is proved that the property was delivered on the terms thus offered. And though it be not made the basis of a contract, it often becomes effective to shield the carrier from liability for things of special and peculiar value, not disclosed at the time of delivery ; for it appears to be agreed that the carrier may in this manner require the shipper to state the nature or value of the property, at the risk of having it received and carried as an article of ordinary value. The carrier does not impose an illegal condition ; he asks for reasonable information bearing on the transaction ; and the shipper is left free to act on his own discretion, accepting the legitimate consequences of his conduct." Edwards on Bailments, § 569.

Why is it not a legitimate consequence of his conduct to hold him to his own valuation when he sues for loss of the property so valued? And why may not the carrier require the shipper to state the nature or value of the property at the risk of being obliged to stand by the value so stated, in reliance upon which it has been accepted and carried, even though it be not made the basis of a contract, as well as at the risk of having the property carried as an article of ordinary value? We are inclined to hold that to be the law.

The defendant grounds another reason for appeal on the instructions, " that the plaintiff's agent was not chargeable with a knowledge or notice of the freight rules of the defendant from the mere fact that they were hung up in the office ; nor chargeable with knowledge of them unless the 'ury were satisfied from the evidence that he had actual

knowledge or some notice or information respecting them; and that, if he did not know them and was not informed of them, it was not proper for the jury to decide, from the rules themselves, that he made a contract freeing the defendant from liability respecting the defects of the car, nor to consider them in ascertaining whether the plaintiff's agent entered into such an agreement; and if they found no such agreement as described, the plaintiff was entitled to recover if they found the primary cause of the injury was the defendant's neglect to furnish a suitable car; although, but for the nature and propensities of the animal carried, no loss would have resulted.

These instructions referred to certain portions of a pamphlet containing the official classification of freight and certain rules and terms for the transportation of freight then in force on the road, which for the information of shippers was hung up in the defendant's freight office, though not in the office where people came to make their contracts for the shipment of freight. The instruction that the plaintiff was not chargeable with notice of the rules contained in the pamphlet upon the facts stated was correct. A pamphlet hanging in a railroad company's office, containing rules and rates, is not of itself constructive notice of its contents. Nor is this a case for the application of the ordinary but not universal rule, that full and adequate means of knowledge are equivalent to knowledge itself. It will not do to hold that where a shipper and common carrier contract about the carrying of freight and the rate to be paid, without reference to the fact that there are printed rules upon the subject, and of the existence of which the shipper is ignorant, he shall be held to have constructive knowledge of the rules, even though the Inter-state Commerce Act requires them to be posted. The defendant claimed to have proved that the attention of the plaintiff's agent was called to these rules and that they were explained to him. This the plaintiff denied, so that a charge based upon both contentions was necessary, and was given.

The remaining part of this reason for appeal has already been sufficiently discussed.

The next reason for appeal is that the court charged "that if, in the course of transportation of the animals, the agents of the defendant in charge of the train were apprised or informed by the plaintiff's agent that the transportation was causing fright to the mare, whereby she was acting badly and was in danger of being killed or hurt by further transportation, and if the defendant's agents were requested by the plaintiff's agent to set the car on the side track at Ashley Falls, to prevent further danger to the mare, it was the duty of the defendant's agents so to do if it could reasonably have been done, and the neglect to do so would have been negligence on the part of the defendant." What actually occurred between the agents of the respective parties in this behalf was a matter of dispute which was left to the jury to decide.

The charge was correct. Most of the objections urged against it are answered by the limitation stated by the court, that it was the defendant's duty to have complied with the requests "if it could reasonably have been done." The charge was appropriate to the facts as claimed by the plaintiff.

At the trial the defendant offered in evidence a way-bill in the ordinary form, containing the place and date of the consignment of the property, its destination, the name of the shipper and of the consignees, a description of the articles, their weight, value, and the rate and amount of expense, whether paid or unpaid. It appeared from the defendant's evidence that it was neither signed by nor shown to the plaintiff or his agent, but was made only for the convenience of the company, and was ordinarily given to the conductor of the train. Upon the plaintiff's objection the court excluded the way-bill and the defendant excepted. For what purpose it was offered and for what reason objected to nowhere appears. If we are at liberty to conjecture that it was objected to for all purposes, and can see that it was admissible for any, then it was wrongly excluded. In con-

cluding whether the defendant was negligent because its agent declined to comply with the request to switch the car off at Ashley Falls, (assuming that the jury found that such request was made,) the information contained in the way-bill delivered to him might be a proper element. As far as appears it was his only source of information concerning the property. If asked to interrupt its transportation he had a right to consult the way-bill as to its destination and value, and determine his action, in some degree, by its contents. What would be negligence in such a case in respect to very valuable property, might not be negligence in respect to property of little value. If the way-bill showed that the property was to be carried but a short distance further, he would have a right to take that into account. In short, for some purposes, the way-bill was admissible evidence. If the decision of the case depended upon this point we should hold that the record did not supply sufficient information to enable us to decide that the court erred.

The questions presented in this case are numerous and some of them difficult and important. The conclusions we have reached upon the points in which we think the Superior Court erred, entitle the defendant to a new trial, and we might have stopped there without considering the other reasons for appeal. But they would have been likely to re-appear after the new trial, and it seemed best to settle the law of the case, so far as possible, now.

As to the plaintiff's requests to charge contained in the finding and enumerated in the plaintiff's bill of exceptions, what we have already said sufficiently indicates our opinion as to the duty of the court respecting all of them except one. We have necessarily discussed the grounds upon which they are based, in discussing the points made in the defendant's appeal, and need not repeat the discussion nor the conclusions. If the same questions arise again we think they are fully answered.

The one request to charge not yet referred to, is the plaintiff's request, number nine, that the court should charge the jury " that the statement of value in the so called bill

of lading only affects the mare, and has no reference to the colt." We see nothing in the case to justify such a charge, nothing to indicate that it was anything but a question for the jury. It was not a question of the construction of the bill of lading, nor what the agreement of the parties upon all the evidence was, but simply what the terms of the bill of lading were. It was for the jury to say, upon an inspection of the bill of lading, whether the figures standing for one hundred dollars were meant to indicate the value of the mare and colt, or only the value of the mare, a question which the finding shows was in dispute.

There is error in the judgment and a new trial is ordered.

In this opinion the other judges concurred.