## ELLIS v. UNITED STATES.*
### No. 9298.

Circuit Court of Appeals, Eighth Circuit.

March 22, 1932.

*Rehearing denied June 17, 1932.

W. A. Carlile, of Sallisaw, Okl. (C. C. Williams, of Poteau, Okl., on the brief), for appellant.

G. T. Sullins, Asst. U. S. Atty., of Ft. Smith, Ark. (W. N. Ivie, U. S. Atty., of Ft. Smith, Ark., on the brief), for the United States.

Before STONE and BOOTH, Circuit Judges, and WYMAN, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a judgment of conviction under an indictment which charged the defendant Ellis and two others jointly with violations of the Act of February 13, 1913, c. 50, § 1, 37 Stat. 670 (18 USCA § 409), which, so far as here material, reads as follows: "Whoever shall unlawfully break the seal of any railroad car containing interstate or foreign shipments of freight or express, or shall enter any such car with intent in either case to commit larceny therein; or whoever shall steal or unlawfully take * * * from any railroad car * * * with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express * * * shall in each case be fined * * * or imprisoned * * * or both. * * *"

The indictment contained four counts. Count 2 charged that defendants, on March 4, 1931, at Ft. Smith, Ark., did unlawfully break the seal and enter a certain railroad car in the possession of the Missouri Pacific Railroad Company, which car contained an interstate shipment of freight, with intent to steal the goods in said car; count 3 charged that defendants did unlawfully steal and carry away from the same car certain goods moving as a part of an interstate shipment of freight, to wit, "Six (6) cases of cigarettes, from R. J. Reynolds Tobacco Company, Winston Salem, N. C., to M. D. Maloney, Fort Gibson, Oklahoma, shipment moving on Winston Salem, N. C., to Ft. Gibson, Okla., way bill No. SR 51515 dated February 26, 1931, of total value of Three Hundred and Forty-five Dollars ($345.00), said car, as aforesaid, being then and there in the care, custody and possession of the Missouri Pacific Railroad Company." Counts 1 and 4 are not here involved.

Defendant Ellis was found guilty on each of counts 2 and 3.

There are a number of specifications of error relied upon, but they relate mainly to three questions: (1) Whether the interstate character of the shipment was shown; (2)

whether the alleged waybill was properly admitted in evidence; (3) whether the motion of defendant at the close of the evidence for a directed verdict should have been granted.

Questions 1 and 3 are so closely related to one another that they may properly be treated together.

The evidence was substantially as follows:

For the government, S. F. Ferrell, a warehouse foreman for the Missouri Pacific Railroad Company at Ft. Smith, testified that he had supervision of cars containing freight that came to Ft. Smith; that on March 4, 1931, Missouri Pacific car 93,125 came into Ft. Smith with accompanying waybill No. 51,515, purporting to cover a shipment from Winston-Salem, N. C., to Ft. Gibson, Okl.; that the waybill covered various packages, including 6 cases of cigarettes; that he checked off the various packages, including the cigarettes, and supervised transfer of them to Missouri Pacific car 47,717; that this car was then sealed, and left the transfer platform, moving under the same waybill.

Hugh Hahn, claim clerk for the Missouri Pacific Railroad Company, testified that he put the notation "March 4th, 1931, Fort Smith, Arkansas, M. P. 47717" on the waybill, and that this indicated that the shipment had been transferred at Ft. Smith into car M. P. 47,717.

W. R. Keys testified that he and Harold Orton had seen cases of cigarettes being loaded into car M. P. 47,717 on March 4, 1931, at the freight depot in the Missouri Pacific yards at Ft. Smith about one or two o'clock in the afternoon; that shortly thereafter on the same day they met defendant Ellis on the Ft. Smith Free bridge; he asked them if they knew anything; they told him they saw four cases of cigarettes; he asked where they were and they told him in what car; they offered to sell him the cigarettes, and he agreed to buy them; about 7:30 p. m. they located the car and broke the seal, and took the six cases of cigarettes; 5 cases they took down on the Poteau river bank; one they took up to the bridge and gave to a boy to help them; the five they delivered to defendant Ellis at his place of business, and he paid for them.

Harold Orton corroborated Keys as to the talk with defendant Ellis, the breaking of the seal of the box car, the stealing of the cigarettes, and the sale to Ellis. He also testified that, at the time of the theft, the car was in a train already made up in the Missouri Pacific yards at Ft. Smith.

Jimmie Culbertson testified that he helped transport the cigarettes to Ellis' place of business, and corroborated Keys and Orton as to the transportation and sale.

U. U. Barger testified that he was yard clerk of the Missouri Pacific Railroad Company at Van Buren, a railroad station between Ft. Smith and Ft. Gibson; that on March 4, 1931, he checked car M. P. 47,717 and found it without a seal; that he put a seal on it; that the car was in a local freight going north; that he did not check the contents of the car and did not see the waybill.

J. W. Lindsey testified that he was in the employ of the Missouri Pacific Railroad Company at Ft. Gibson; that it was his duty to check freight out of cars; that on its arrival on March 4, 1931, he checked the contents of car M. P. 47,717 with its same accompanying waybill, and found a shortage of six cases of cigarettes, and made a notation on the waybill to that effect.

Defendant Ellis testified in his own behalf denying in detail the testimony of the witnesses Keys and Orton so far as it related to him. He also testified that he was in Muskogee at the time in question.

Other witnesses for the defendant gave testimony tending to establish his defense of an alibi. Still other witnesses testified that the reputation of defendant was good.

This being the state of the testimony, we think a case for the jury relative to defendant Ellis was clearly made out under the statute above quoted, when considered in connection with section 550, title 18, USCA, which reads as follows: "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

As to the admission in evidence of the waybill, it may be said that, if it were necessary to prove that the cigarettes came from Winston-Salem, N. C., to Ft. Smith, it might well be doubted whether the waybill by itself was competent evidence of that fact, or whether there was any sufficient proof in the record of such fact; that point having been directly raised in the trial court. Reineke v. United States, 278 F. 724 (C. C. A. 8).

But it was not necessary to prove that the cigarettes were shipped from Winston-Salem, N. C. It was sufficient to prove that at the time of the breaking of the seal, entry of the car, and theft of the goods, the goods

were moving as an interstate shipment. The evidence of this is clear and convincing, and is uncontradicted.

The purpose of the statute is to give protection to interstate and foreign shipments while in transit. The gravamen of the offense is the breaking of the seal and the stealing from the car goods constituting such shipments.

It may be said that there was a failure of proof, in that the indictment alleged that the interstate shipment was from Winston-Salem, N. C., to Ft. Gibson, Okl.; but no competent evidence showed the shipment to have originated at the point alleged. Failure to prove the original point of shipment in the case at bar was immaterial, because the interstate character of the shipment at the time of the offense was proved without the necessity of proving the point of original shipment, and without the necessity of using the waybill for that particular purpose. Reliance upon the statute (18 USCA § 411) to establish the interstate character of the shipment was unnecessary. For this reason, the case of Reineke v. United States, supra, is not applicable.

The failure to prove the point of origin of the shipment was in no way prejudicial to defendant. He was not misled by the allegation in the indictment; and the shipment was so identified on the trial that he would be protected against another charge for the same offense.

But the waybill was, nevertheless, properly admitted in evidence on two grounds:

(1) As an incident to the handling of the shipment at Ft. Smith and at Ft. Gibson. Minor v. United States (C. C. A.) 284 F. 846;

(2) As forming a basis for and an explanation of the actions of the railroad employees at Ft. Smith with regard to the shipment. It showed why they transferred the shipment to the M. P. car 47,717 and started it on its journey to Ft. Gibson, Okl. As serving this purpose, it was immaterial whether the statements in the waybill were true or false; or whether the waybill was a duly authorized document or not.

We take judicial notice that in shipments like the present one, the usual course of business is for an authorized agent of the initial carrier to issue a waybill. This waybill goes with the shipment and usually shows the name of the consignor and of the consignee, with his address, the character of the shipment, the number of the car in which the shipment is started, and the routing. At points of transfer the proper railroad agent adds a notation on the waybill showing the number of the car into which the shipment is transferred.

In the case at bar, a document which, on its face, purported to be such a waybill came into the hands of the railway agent Ferrell at Ft. Smith in the usual course of business. The railroad employees at that point acted on the faith of the contents of the waybill. The shipment was accordingly started from Ft. Smith, Ark., on its interstate journey to Ft. Gibson, Okl.; and, while on this interstate journey, the seal of the car was broken and the goods stolen.

Wigmore on Evidence, § 2132, states the rules as follows: "When the execution of a document is not in issue, but only the contents or the fact of the existence of a document of such a tenor, no authentication is necessary."

The admission of the waybill was an apparent, not a real, exception to the hearsay rule.

In 6 Encyc. of Evidence, p. 446, the statement is made: "This principle is likewise applicable to the statements of a third person (not a witness) offered for the purpose of proving the information possessed by the person to whom the statements were made, and thereby bearing upon his belief or motive in relying and acting upon such statements."

See, also, 2 Jones on Evidence, § 300; Coupland v. Housatonic R. Co., 61 Conn. 531, 23 A. 870, 15 L. R. A. 534; Harrison v. United States (C. C. A.) 200 F. 662, 674; Dr. J. H. McLean Medicine Co. v. United States, 253 F. 694, 697 (C. C. A. 8).

We think the waybill was properly received in evidence, and that the judgment finds ample support in the record.

The judgment is affirmed.